[No. 16692. Department One. December 12, 1921.]

REEVES AYLMORE, JR., *Respondent*, v. ERNEST L. BICKFORD *et al.*, *Appellants*, JAMES F. LANE *et al.*, *Defendants*, SINE I. TENNANT *et al.*, *Respondents.*[1]

COVENANTS (11)—RUNNING WITH LAND—WATER CONTRACT—CONSTRUCTION. Where owners of land on which springs were located, who had collected and stored the water for domestic use, entered into an agreement with the owner of lands over which the waters of the springs had been accustomed to flow, stipulating that the latter should be permitted to tap their pipe and take one-third of the water in consideration of his grant to such appropriators of all his right, title and interest in the waters of such springs, the agreement did not constitute a covenant running with the land.

WATERS AND WATER COURSES (67, 68)—CONVEYANCES—WATER CONTRACT—RIGHTS AND LIABILITIES OF PARTIES. The owner of lands who has a water contract providing for service of water to himself is under no obligation to provide water service to purchasers of subdivisions of his land, where the contracts do not so provide; nor is a purchaser of a tract entitled to the use of the pipe line with-

[1]Reported in 202 Pac. 249.

out the owner's consent, where the pipe was laid after sale to such purchaser in such a manner as to clearly indicate the owner's dominion and control over it.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered April 21, 1921, in favor of the plaintiff and certain defendants, in an action for equitable relief, tried to the court. Reversed.

*Robert A. Devers,* for appellants.

*Gill, Hoyt & Frye,* for respondents.

MITCHELL, J.—Prior to December, 1905, James F. Lane and John P. Hoyt appropriated to their own use the waters of a spring, or a number of springs, originating on block 4 of White and Noble's Addition to East Seattle. James F. Lane and wife owned twenty-five lots of block 4, upon which lots the springs were situated, and alone or with the Hoyts owned block 3 of the same addition. John P. Hoyt and wife owned real property adjacent to that belonging to Lane, which was subject to, or conveniently located with reference to, the flow of the water from the springs. Together they had constructed a storage tank near the springs and had piped the water to their several properties. Arthur F. Bickford and Ernest L. Bickford were the owners of nearly all of J. T. Forrest's First Addition to East Seattle, and had not the waters of the spring been diverted they would have flowed over and across the Bickford property, but not over that portion of it subsequently acquired by Reeves Aylmore, Jr., plaintiff. As a matter of amicable adjustment of any question that might otherwise arise in regard to the use of the water, James F. Lane and wife, as parties of the first part, and John P. Hoyt and wife, as parties of the second part, and Ernest L. Bickford and wife with Arthur F. Bickford and wife, as parties of the third

part, entered into a written contract (hereinafter spoken of as the water contract) on December 29, 1905, concerning the storage and use of the water. The contract provided that, whereas the first and second parties had appropriated the waters to their own use for domestic and irrigation purposes, and had erected a storage tank on block 4 wherefrom the water had been piped to their properties, at an expense of $350; and whereas the parties of the third part, through whose lands the rivulet or stream flowed in its natural course before it was appropriated, desired to tap the water pipe of the first and second parties for the taking of water therefrom for domestic and irrigation purposes, and which was agreeable to the first and second parties, the water to be so taken, however, not to exceed one-third of the flow in the pipe, it was agreed:

"That the said parties of the first and second parts will allow the said parties of the third part to tap their said pipe at some point on said block three and will and do hereby grant and convey to said parties of the third part, their heirs and assigns, the right to so tap said pipe and take therefrom, at the place where so tapped for the uses and purposes hereinbefore mentioned, not to exceed one-third of the water flowing therein;

"And said parties of the third part in consideration of the covenants and agreements on the part of the parties of the first and second parts, do hereby agree to and do hereby grant and convey unto the said parties of the first and second parts, their heirs and assigns, all of the right, title and interest of the said parties of the third part which they have had or may have to the waters of said spring or rivulet and the use thereof by reason of the fact that if not appropriated, as hereinbefore stated, it would have flowed in its natural state across J. T. Forrest's First Addition to East Seattle owned by said parties of the third part,

or otherwise, it being the intent of all parties hereto to adjust by this agreement, any and all claims which they or either of them may have had or may have to the waters of said spring or rivulet and the use thereof where it has been appropriated as hereinbefore stated, or elsewhere, and to respectively give, grant and convey to each other the right to appropriate, divert and use the said waters equally for the purposes hereinbefore specified; that is to say, to the parties of the first part one-third thereof, to the parties of the second part one-third thereof, and this indenture is and is to be taken as a full and complete conveyance, each to the other, of any and all rights of each and all parties hereto to said waters and to the use thereof for the accomplishment of the purposes herein set out.''

It was further agreed that the parties of the third part should pay $116.67 as their one-third of the cost of the construction of the works as they then existed, and that the tapping of the water pipe should be done in a workmanlike manner, from which point the distributing pipe of the third party across block 3 to reach the J. T. Forrest First Addition should be placed deep enough not to interfere with the ploughing and cultivating of the ground. It was also agreed that the expense of maintenance, and of additions agreed upon, down to the point where the two-inch pipe should be tapped, should be borne and shared equally by the parties, and that the parties should not make use of their respective shares of the water except for the purposes mentioned and upon the designated properties of the parties. It was further agreed that the third parties might, instead of tapping the pipe, take their share of the water at the intake on block 4 and from thence conduct it to a tank to be erected by the third parties on their own property, in which event, and if parties of the third part do not exercise their right to tap the two-inch pipe at some point on block 3, the

parties of the third part shall be relieved from paying
the sum of $116.67 mentioned and shall be relieved from
paying any of the expenses of maintenance, but not re-
lieved from their share of expense incident to any im-
provement agreed upon by the parties for the purpose
of improving the waters or flow thereof to the point
at which it may be used for the benefit of the parties.
The concluding paragraph of the contract is as follows:

"It is further mutually expressly covenanted and
agreed that this indenture is and shall be of full force
and effect and binding upon each and all of the parties
hereto, and their and each of their heirs, executors,
administrators and assigns, and shall be taken and con-
sidered as and shall be covenants and agreements
running with the land and binding upon the grantees
respectively of the above named parties and each of
them, as the owners of each and all of the land here-
inbefore described respectively."

The contract was recorded in the county auditor's
office and afterwards James F. Lane and John P. Hoyt
acquired another lot in block 4 upon which there is a
spring, and they and the Bickfords purchased nine
other lots or parcels of land near the spring as a pre-
caution against contamination of the water. After the
date of the water contract, the Bickfords occupied their
property in Forrest's First Addition as a home. For
their water supply they laid, at their own expense, a
water pipe from the intake at the springs to two bar-
rels, used for storing the water, on their own premises,
and thence to their residence. Some time after the
date of the water contract a large water tank was
erected near the old one, and shortly the old one fell
into disuse and decay. A replat of Forrest's First
Addition was made and filed, designating the property
as tracts 1 to 10. Tracts 3 to 10, of different sizes from
a small area to four acres, were owned by the Bick-
fords. By a statutory warranty deed dated October 5,

1910, delivered shortly thereafter, tract 5 of the replat
was conveyed to Reeves Aylmore, Jr., on which he built
a residence, completing it about May, 1911. It has
been his residence since that time.

About December, 1910, or January, 1911, and after
the sale of tract 5, the Bickfords changed the plan of
bringing water to their lands. They connected a two-
inch water pipe with the large tank, installing a shut-
off at that place, laid the pipe across the lands of
James F. Lane and John P. Hoyt and thence to the
Bickford residence, and then on to a public road which
crosses the replatted property, and along the highway
to the property line of tract 5, putting in a shut-off.
During the building operations on tract 5, a private
service pipe was connected at the property line, which
has at all times since been used to supply that tract
with water. Subsequent to the sale of tract 5, other
tracts were sold and conveyed by warranty deeds,
direct or intermediate from the Bickfords, to defend-
ants Sine I. Tennant, S. H. McElfactrick and wife, and
Perie A. Ament and husband, each of whose tract was
supplied, when needed, with water in the same manner
by extending the pipe to the property line and putting
in a shut-off. The defendants Tennant, McElfactrick
and Ament have paid water rent, being cautious, on
purchasing their properties, in agreeing with the
grantors that water should be delivered in the manner
it has been for a consideration. It seems to have been
understood that the plaintiff should not pay anything
for his use of water the first year. Thereafter, for two
or three years, he paid an annual charge made by Bick-
ford, and then for two or three years he refused, as he
testified, to pay anything as water rent, while Bickford
testified his understanding was that payments were re-

fused because Reeves Aylmore, Jr., claimed he had been compelled on two or more occasions to assist in cleaning out or repairing the intake, ditch or water tank during the absence of Bickford. Again from July, 1917, until after November, 1919, Bickford was absent from the state, and upon his return and demand that Reeves Aylmore, Jr., pay water rent, which was refused, he threatened to remove the water pipe and discontinue the service to his property. This suit was then brought by Reeves Aylmore, Jr., against the Bickfords and their wives, John P. Hoyt (his wife having lately died), Sine I. Tennant, S. H. McElfactrick and wife and the Aments.

Upon the trial a judgment was entered in favor of the plaintiff and defendants Sine I. Tennant, S. H. McElfactrick and wife and Perie A. Ament and husband, that each was the owner of his respective tract in the replat of Forrest's First Addition and entitled to the undisturbed use of the water flowing from the spring located on block 4 of White and Noble's First Addition to Seattle, through the pipe laid to the tract of each, in the proportion that it bears to all the land in J. T. Forrest's First Addition, coupled with the obligation on the part of each tract owner to pay to James F. Lane and John P. Hoyt the proportionate share for the upkeep and expense incident to the maintenance of the water plant located on block 4 and the making of any additions thereto which may be agreed upon by the parties in interest, and to pay defendant E. L. Bickford each his proportional share of the installation and upkeep of the said Bickford's system after said water is diverted. The Bickfords were enjoined from interfering with the flow of the water to the premises of the owners of the tracts. The Bickfords and John P. Hoyt have appealed.

It appears that, about the year 1910, Arthur F. Bickford and wife succeeded, by conveyance, to the interest of Ernest L. Bickford and wife to all of the property they owned in J. T. Forrest's First Addition, and that James F. Lane and John P. Hoyt have been punctually paid by Mr. Bickford one-third of all expenses for maintenance of the works and costs of improvement, and, also, of the lots purchased to protect the springs, according to the terms of the water contract. There has been no controversy between the parties signing the water contract.

In their brief respondents say: "The case hinges entirely upon this question—is the agreement entered into between J. F. Lane, John P. Hoyt and Ernest L. Bickford (the Bickfords) one known as a covenant running with the land?" There is nothing in the water contract that amounts to a covenant running with the land, or at all, with reference to the water, by which James F. Lane and wife and John P. Hoyt and wife agreed to deliver water at the lines of the properties now owned by the respondents. As to the point of delivery of the water, they simply agreed that the Bickfords might take one-third of it from the intake at the springs, or by tapping the water pipe on the lands of James F. Lane and John P. Hoyt, with the right in either event to cross their lands for the purpose of reaching the lands of the Bickfords. Neither is there anything in the terms of the water contract that amounts to a covenant running with the land, or at all, with reference to the water, by which the Bickfords agree or are obligated to deliver any of the water to anyone at any place at any time. They were granted the right and privilege of receiving from the intake at the springs, or at another place on the lands of James F. Lane and John P. Hoyt, one-third of the

water. None of the parties signing the water contract bound himself to deliver any water at the lines of the properties of the respondents.

Rather than as suggested by the respondents, the question in the case is: Are the Bickfords, or either of them, under obligations to deliver water at the properties of the respondents? It has been seen that the water contract does not provide for the service. There is nothing in the deeds of conveyance to the respondents which requires it. Respondents Sine I. Tennant, S. H. McElfactrick and wife and the Aments have been receiving the service by independent agreements, and the courts are without power to make new ones for them. Nor is the respondent Reeves Aylmore, Jr., entitled to the use of the pipe line without the consent of Mr. Bickford, the owner of it, who laid and constructed it, after the sale of tract 5 to the respondent, in such a manner as to clearly indicate his dominion and control over it. Some contention is made on behalf of the respondent Reeves Aylmore, Jr., because of the fact that in making his purchase he was furnished an abstract of title showing the water agreement which had been recorded. As a representation it amounted only to saying the water contract was existing and outstanding, and cannot be considered as a representation, or inducement for the belief, that thereafter his grantor would or should construct and maintain at his own expense a line of water pipe to tract 5, for there was no such provision or obligation defined in that contract.

Unaided by any findings of fact by the trial court, an examination of the record in this case leads to the conclusion that the judgment is erroneous. The judgment is reversed, and the cause remanded with directions to set aside the injunction and dismiss the action.

PARKER, C. J., FULLERTON, TOLMAN, and BRIDGES, JJ., concur.